Good morning everyone. I want to again thank Judge Seiler for joining us from the Sixth Circuit and helping us out with our docket which we sorely need. So thank you very much and we appreciate the work of your law clerks too. And we will take up the cases in the order in which they appear on the docket. We have one case submitted on the briefs today, U.S. v. Jacobson. So Zavala v. Holland, you may proceed. Your Honor, before we begin, I'd just like to mention I have two hearing aids in. It's very hard for me to hear. I know. It echoes, doesn't it? The microphones do help. And so if people would use them, I'm usually pretty good. And if you can't, if I can't hear it, I'll bring it forward and send it to you. All right. Thank you for alerting us, Counsel. Good morning, Your Honors. I'm Randy Baker. I represent the appellant Mark Zavala. I'd like to reserve three minutes for rebuttal. All right. The dissenting judge on the California Court of Appeals in this case found that Mr. Zavala's convictions should have been reversed based on the admission of testimonial hearsay through the prosecution's gang expert. The majority disagreed with that position for two reasons. The majority found that Mr. Zavala had forfeited his Sixth Amendment claim, and second, that the testimony from the gang expert was not, in fact, hearsay, that it was admissible. Both of the majority's findings are based on an unreasonable construction of the several material facts in the record. First, it overlooks that in the eliminate motions, not only did counsel object to the admission of the prosecution's hearsay, the expert's hearsay testimony, but, in fact, there was a full discussion of the law in California of the circumstances under which an expert may recite hearsay. The controlling precedent in that case at that time was the California Supreme Court case of Gardley. The — I can't recall if the prosecutor cited it, but the judge himself expressly stated that under the laws he understood it, the expert is entitled to rely on hearsay and recite it to the jury. And the judge also advised counsel that he would consider the objection continuing and that the objection would preserve the issue on appeal absent changed circumstances. There were none. Nonetheless, at trial, again, when the gang expert stated that he had been told that Mr. Zavala was the leader of this gang, the Shiloh Gardens gang, counsel again interposed the Confrontation Clause objection. Counsel — the court overruled the objection. Under California law, under these circumstances, as the dissent points out, further objection is futile, and in the State of California, futile objections are unnecessary. The majority disregarded the doctrine of futility entirely, and it also disregarded these specific facts, showing that its claim of forfeiture was unreasonable. I would add, finally, in Federal court, whether or not a State law — a State forfeiture rule is an adequate independent ground, that's a Federal question, not a State law question. And on this record, it's very clear, as the dissent found, further objection, given the State of the law and the trial court's recognition of that State of the law, was futile. And so this issue is properly before the Court here. Now — Let's just say — let's say we agree with you on that point in terms of futility. But what — don't you have to address Crawford? I mean, you've got Sanchez on the State side, which says one thing, Crawford says another, and we're examining this based upon Crawford, right? That's correct, Your Honor. And although I see the tension between the jury being told to determine whether what the gang expert said that you claim is hearsay is correct, and yet you have the language of Crawford, how do we reconcile that? Well, I think the dissent in Sanchez says those are inconsistent statements. There's already a risk. Let me go to the Williams case, because they sort of address this. So Williams v. Illinois, you know, there's no holding, per se. It's a plurality of four, four dissenters, and Justice Thomas concurring on different grounds. So, of course, the dissent says if an expert is reciting a proposition such as, you know, the swab sample came from Mr. Smith, that that's for the truth of the matter asserted. The concurrence agrees with that portion of the dissent's position. Now, what's interesting is what the plurality says. The plurality says in this case it's not admitted for its truth. But the plurality warns expressly. Now, if this were a jury trial, which, of course, Mr. Zavalas was, that would be a different question, because in a jury trial, it's essential that there's carefully worded jury instructions to ensure the jury doesn't mistakenly consider the out-of-court statements for their truth. And in this case, that's what they were asked to do, right? They were asked, the instruction said, consider it for its truth. How do we reconcile that? I mean, you've got, on the one hand, you have Crawford that says that what would ordinarily be considered hearsay but not admitted for the truth of the matter is okay. And yet you have a jury instruction that tells the jurors that they are to determine whether those statements, the same statements, are true. How do we reconcile that? Now, Your Honor, I'm not sure how you're characterizing Crawford. In my understanding, Crawford says an out-of-court statement admitted for its truth violates the Sixth Amendment. Are we on the same page on this? Right. No, I agree. Okay. But that's when it's proposed on the basis that it is not for the truth of the matter. But in the trial here, the jurors were told to consider whether those same statements were true. So my question is, how do we reconcile that? Well, I think, Your Honor, we reconcile it the way the California Supreme Court did in People v. Sanchez and the dissented, which is, in this case, there's no question you know, obviously there's an argument on the U.S. Supreme Court whether and under what circumstances an expert might recite out-of-court statements and nonetheless avoid a Sixth Amendment violation. But all nine justices on the U.S. Supreme Court, I think, based on my recounting of the plurality opinion, agree. If you instruct the jury that you're supposed to consider whether the out-of-court statements are true, as well as saying they're not for their truth, it is just not reasonable to infer that the jury didn't consider them for their truth, in which case we have a Sixth Amendment violation. Because from your perspective, that would then mean that Crawford doesn't help the State, right? Because, in fact, the statements were introduced for their truth. That's right. I think Sanchez is right. I think the dissent's right. And interestingly, you know, the majority acknowledges this instruction, but it doesn't attempt to explain it, and it doesn't, the majority opinion doesn't actually acknowledge the instruction says, consider it whether they're true. The majority says, well, this is confusing, perhaps, and it might have been better not to issue it. But I would just point out, as this Court said in Taylor v. Maddox, and in other cases, actually, it's not good enough that the Court simply notes something happened. The Court has to address it. And in this case, as Your Honor points out, there's an inconsistency between not for the truth and this instruction. And the majority doesn't even purport to explain how that can be reconciled. But if we were to go that way, would we be, I mean, would we be announcing a new rule of constitutional law instead of, in light of Williams being a plurality? I mean, we don't really have a Supreme Court decision on point, do we? Well, Your Honor, I agree we don't. But since this case is brought under D-2, 2254 D-2 rather than D-1, the predicate of our argument is not that there is a controlling United States Supreme Court precedent which the lower court has failed to follow or misapplied. What this case turns on is that the Court has failed to properly construe the facts in the record. And as a result, what this Court does is review the matter de novo. And so the controlling case is no — this Court is totally free to rely on Ninth Circuit precedents such as Oscampo v. Vail, which we've cited. And I believe it's the Gomez decision which directly addresses when and under what circumstances an expert may recite hearsay. Do I understand your position to be that we wouldn't be, if you will, making new constitutional law? We would take Crawford on its face, which says that when statements are introduced not for the truth of the matter, that they don't violate the Confrontation Clause. But here in this case, arguably, these were introduced for the truth of the matter because that's what the jury was asked to do. I gather you're asking us to just say look at the facts of this case as a one-off where clearly something wasn't introduced on the basis that it would be protected under Crawford. Exactly. Exactly. And I might reserve the last few seconds. Thank you. May it please the Court, John Deist for Respondent. I hope all of the judges have received the Rule 28J letter that I sent a few weeks ago. I cited a case with a few Ninth Circuit authorities that specifically say the United States Supreme Court has not clearly established that the admission of out-of-court statements relied upon by an expert violate the Confrontation Clause. I think that sentence disposes of the claim on the merits, and I would emphasize that there's really no proper claim of instructional error before this Court. Appellant relies upon instructional error to a substantial extent, but no claim of instructional error was presented to the California Supreme Court or in the initial habeas corpus petition presented to the district court. Were there objections made at the trial level about the instruction? Judge, there were substantial objections, and the Court of Appeal discussed those objections at great length, 14 pages. And the Court of Appeal found that there was forfeiture in large part, but the Court of Appeal also found that a few items had been properly objected to. The Court of Appeal said it's essential in the context of Crawford claims, testimonial hearsay, to have a contemporaneous objection so the trial court can know exactly what we're talking about. Sometimes testimonial hearsay is hard to determine. Field ID cards, interviews of witnesses, is it testimonial, is it formal? The trial judge needs to know exactly what's being reviewed here. So your opponent suggested that the defense had raised the issue in a motion in limine and in camera, and that to continue to bring up the objection would have been futile. What's your response to that? Well, I understand that, but in at least three cases, the trial judge overruled the And so if the Court of Appeal said, well, we see in three cases there was a proper objection, so obviously it wasn't futile, and the trial judge was not hostile, threatening sanctions against anyone who tests who any lawyer who objected during trial, the trial judge heard the objections, and the Court of Appeal recognized, okay, that's a valid objection, and so we are going to consider that limited proffer of testimonial hearsay. But the others were too general. They were made too early in trial. But there were about two or three objections that the Court of Appeal did say. We recognize it was made, and so we'll consider it on the merits. And so I have to – I can't rely on forfeiture entirely because the Court of Appeal expressly ruled on the merits, and I think the crucial issue is there really is no controlling U.S. Supreme Court authority. When you look at – when you research in this area and you see the comments on the Williams case, is there controlling authority from the Williams case? Judges all across the country and even Justice Kagan have made it clear that the court cannot rely on out-of-court statements of others. And I do think that it's incorrect to say that the instructions here were radically conflicting. When Sergeant Livingston testified, the trial court twice said, jurors, you cannot rely on out-of-court statements by other people to Sergeant Livingston to prove the truth of the matter asserted. But isn't that in conflict with its instruction that they were to determine whether the underlying statements were true or not? Your Honor, I don't really think so, because basically the final instruction said, all right, you heard from Sergeant – you heard from expert witnesses who expressed opinions. You have to consider the validity of those opinions. You have to consider the truth of the underlying facts. And if an opinion hasn't been proved properly, you may not consider it. But I think in this case Sergeant Livingston had ample evidence, direct evidence of the two key points of his opinion. His opinion – two opinions were that the defendants were gang members and that the crime was committed for the benefit of the gang. And there was abundant direct evidence to support both of those opinions. And so the jurors were basically told, hypothetically, if an expert came in and hearsay. He said, I heard the defendant was a gang member. I didn't know it personally, but I heard it. I read it in police reports. I read about many incidents in police reports. I got secondhand information from all sorts of sources. Therefore, it sounds like the defendant was a gang member. Is it your position, then, that because we're operating under AEDPA, that even were we to find that the jury instructions would be understood by a reasonable juror to require them to determine the truth of the matter of some of these underlying statements made by the officer, that nonetheless there would be no relief for the defendant because we are operating under AEDPA and you've got no Supreme Court law that directly tells us what to do differently? Is that correct? That's certainly my position. But, frankly, Judge, I don't even think I need AEDPA. And the reason is, when you think about Sergeant Livingston's opinion, that the defendants were gang members, while Codefendant Hensley said that Appellant and Rodriguez were members, if not leaders, of the Shalhou Gardens gang. Direct testimony of their membership. Sergeant Livingston had been a gang officer for many years in the community. He had conducted task force investigations, spoken with 250 gang members, including 10 Shalhou Gardens members. He knew this small town of Campbell. He knew who the gang leaders were. He had had personal interaction with Appellant on two or three occasions. Gang disturbances. He and other officers went out. The defendant, Appellant, was in gang clothing, hassling the officers, being confrontational. Sergeant Livingston was personally told by a known gang member, yeah, Zavala's a member of Shalhou Gardens. Let's assume all that is true. You're basically saying that even if there was an error here that the Supreme Court has not yet defined, it wouldn't have made any difference in this case because it's a harmless error. There's enough direct evidence to arrive at the same conclusion. And so no harm, no foul. I definitely am saying that. And I still don't think the instruction was all that confusing. I think it can be reconciled. It wasn't two sentences, one after the other. You cannot consider the hearsay statements, but you must determine the truth of all evidence. I think that in the context, the jurors could say, okay, we've got to review the evidence. We have to determine. If Sergeant Livingston said that he saw the defendant with other gang members, we have to determine whether or not that's true. I wouldn't be hearsay under any circumstances, right? That's right. And so we review everything, and maybe a few of the hearsay statements, not all of them were clearly testimonial. Some might have been hearsay, but field ID cards, somebody heard that appellant ordered somebody to jump a new gang member into the gang. Is that testimonial hearsay? Hard to know. It wasn't fleshed out. It doesn't really sound like it. But the testimonial hearsay, if there was any, was very marginal, and the direct evidence of both gang membership and the purpose of the robbery committed for the benefit of the gang. And I would say there was virtually no doubt that appellant was one of the robbers, and the commission of the robbery for the benefit of the gang. Several gang members got together to discuss the robbery. They planned it. They got a getaway car from a neighboring gang. They scouted out the victim's house. They had a lookout posted on the corner. Many, many aspects of this robbery made it gang-related. And so I do argue that there was no error, but in any event, appellant has not proven a substantial and injurious effect on the verdict. And so unless the court has other questions. No. Thank you very much, counsel. Just a few points. The standard of prejudice here is not what would have changed the opinion of the gang expert, but the jury, its breadth, whether it affected them. And this case is brought under D-2. We don't need a controlling Supreme Court precedent. Let's say that's correct. Your opponent says there was no substantial and injurious effect on the verdict. What's your response to that? My response is that as the dissent pointed out, the bucket loads of testimonial hearsay were prejudicial. This circuit has recognized inadmissible gang evidence improperly admitted is highly prejudicial. And I think, as we pointed out in the brief, the evidence that counsel cites is so compelling was extremely questionable. Unrebutted expert testimony that the photo IDs were flawed, both in their administration and the fact that Mr. Zavala was the only Latino fellow in the crew of six that people looked at. The person who was supposed to be Mr. Zavala was described variously as 5'5", 5'6", and 5'8". Mr. Zavala is 5'11". He was supposed to have had this thing called a chongo haircut, where you have a ponytail and a shaved head. Some of our judges have those. So you're familiar with it, of course. The last person to see Mr. Zavala, his coworker from three months earlier, said he had a ponytail, but otherwise he had regular hair. There was a lot of reason to doubt. And as far as the gang allegation, there was no substantial evidence to support it at all without the hearsay, because the hearsay, in order to prove a gang allegation, you have to show at minimum two qualifying predicate offenses by gang members. The only way we know the offenses recited by the gang expert were committed by members of the gang was testimonial hearsay, that these guys who did it were gang members. In addition, there was nothing connecting Mr. Zavala to that gang absent the testimonial hearsay. There was a tattoo, but the gang expert admitted, well, the tattoo refers to gangs generically, not this gang. And if Mr. Zavala was a member of some other gang or a generic gang, that doesn't work. He has to commit it for this gang. I know I'm over my time, so thank you. Thank you very much, Counsel. Zavala v. Holland will be submitted, and we will next hear Whelan, Ortiz v. Barr.
judges: Siler, Wardlaw, M. Smith